# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENNETH E. GARNER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-16-95-RAW-SPS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
|     Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Kenneth E. Garner requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born August 31, 1967, and was forty-four years old at the time of the administrative hearing (Tr. 34, 106). He completed the tenth grade, and has past relevant work as a driver (Tr. 119, 292). The claimant alleges that he has been unable to work since January 1, 2008, due to degenerative disc disease, and inoperable bulging discs at L4 and L5 (Tr. 118).

**Procedural History**

The claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on March 15, 2010. His application was denied. ALJ Michael A. Kirkpatrick conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated October 3, 2011 (Tr. 18-28). The Appeals Council denied review, but this Court reversed in Case No. CIV-13-289-RAW, with instructions to properly consider the claimant's complaints of pain and what work he can perform with that level of pain (Tr. 402-413). On remand, ALJ Lantz McClain held a second administrative hearing and again determined that the claimant was not disabled in a written opinion dated November 25, 2015 (Tr. 286-293). The Appeals Council again denied review, so ALJ McCl.ain's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform the full range of sedentary work as defined in 20 C.F.R. § 416.967(a) (Tr. 21). The ALJ concluded that although the claimant could not return to his past relevant work as a driver, he was nevertheless not disabled according to Rule 201.25 of the Medical-Vocational Guidelines, *i. e.*, "the Grids" (Tr. 27).

## Review

The claimant contends that the ALJ erred by (i) failing to properly assess his RFC, after misidentifying his severe impairments at step two; (ii) again failing to properly analyze his credibility, including completely ignoring the Court's remand instructions regarding consideration of his pain; and (iii) failing to perform a proper step five analysis. The undersigned Magistrate Judge agrees with the claimant's first contention and finds that the decision of the Commissioner should therefore be reversed and the case remanded for further analysis.

ALJ Kirkpatrick found in the first opinion that the claimant had the severe impairments of degenerative disc disease of the lumbar spine, status post laminectomy; and obesity, as well as the nonsevere impairments of hypertension and gout (Tr. 20-21). In the second opinion, ALJ McClain determined that the claimant's severe impairments were status-post lumbar surgery and obesity, in addition to the nonsevere impairments of fracture of right hand resolved, hypertension, and gout (Tr. 288). At step four, ALJ McClain cited a number of records noting that the claimant had degenerative disc disease,

but made no mention of discussion of degenerative disc disease as one of the claimant's impairments (Tr. 289-291). The claimant was previously determined to be disabled from July 1998 through July 2006 (Tr. 32).

As noted in the undersigned Magistrate Judge's previous opinion, medical records reflect that the claimant received treatment for his chronic herniated lumbar disc, that it was not amenable to surgery, and that it was characterized by paraspinous muscle spasms (Tr. 246-262). Dr. Robert Wendell Ross treated the claimant as far back as 1998. His notes reflect that the claimant was being treated for chronic low back pain and was on a pain management contract (Tr. 208). On November 24, 2007, Dr. Ross noted the claimant was walking with a severe bilateral antalgic gait and had marked paraspinous muscle spasm (Tr. 206). Treatment notes from 2009 through March 2010 indicate that the claimant reported continued back pain and decreased range of motion and had positive straight leg raising tests (Tr. 217-224). He noted on one visit that the claimant was attempting to get disability, and stated that the claimant could not do manual/industrial work (Tr. 223). He prepared a physical RFC assessment on March 9, 2011, indicating that the claimant could sit a total of forty-five minutes and stand/walk a total of thirty minutes in an eight-hour workday; could rarely lift/carry up to ten pounds; could rarely push/pull, work in extended position, and reach, but never work above shoulder level or work overhead; could occasionally grasp, finger, and perform fine manipulation; never perform postural limitations; and had no environmental restrictions other than moderate driving (Tr. 241-242). He attributed the claimant's limitations to inoperable degenerative disc disease and stated that the claimant was unable to do most

daily activities without severe pain. As to objective findings, he referred to the claimant's paraspinous muscle spasms, decreased range of motion, and insomnia, then stated that any amount of strenuous activity caused the claimant to need several days of complete rest (Tr. 244). He listed the claimant's impairments as "failed HNP, DDD, degenerative arthritis radiculopathy, and right thigh second to degenerative disc disease of the low back" (Tr. 244).

Ron M. Gann, D.O., examined the claimant on March 15, 2008. He noted the claimant had some decreased range of motion in his back, lower back with forward flexion at approximately 70% of normal, left side bending approximately 60%, and right side bending and flexion at 80% of normal limits of range of motion (Tr. 181). He further recorded moderate tenderness to palpation at the L4 and L5 in the paraspinal areas bilaterally (Tr. 181). He assessed the claimant with chronic lower back pain and a possible herniated disc per history, with pain that, in his opinion, provided no significant hindrance of ability to move; and elevated blood pressure (Tr. 182).

On May 16, 2009, Dr. David Wiegman conducted a second consultative physical examination. He noted that the claimant had a normal symmetric steady gait and could walk on his toes but had difficulty walking on his heels due to pain (Tr. 211). He reported the claimant's degenerative disc disease diagnosis with a bulging disc, and noted that the claimant did have decreased range of motion of his back as well as tenderness to palpation over his back (Tr. 212-216).

A third consultative examiner, Dr. Jimmie Taylor, saw the claimant on July 5, 2010 (Tr. 225). His impression was degenerative disc disease low back, radiculopathy

-6-

right thigh secondary to the degenerative disc disease, and chronic pain, and he also noted a decreased range of motion (Tr. 227-221).  A state reviewing physician found that same month that the claimant could perform a full range of medium work (Tr. 233).

More recent treatment notes indicate continued evaluations of malalignment, tenderness, and limited range of motion, with normal gait and station (Tr. 462-483).

At the first administrative hearing, the claimant testified that he has pain in his lower back, right leg, both feet, and his hands, and that he also experiences gout flare-ups every three months (Tr. 36).   He stated that he takes pain medications daily, but they do not take away his pain, and his pain interferes with his ability to sleep (Tr. 37-39).  He stated that during the day he lays down or reclines approximately five or six hours a day, that his daughter does his housekeeping, and that he has no hobbies (Tr. 39). At the most recent administrative hearing, the claimant testified that his primary problem is pain in his lower back, which extends to his hands, legs, and feet going numb when he stands for too long (Tr. 331).  He testified that the pain primarily travels down his right leg, and that he takes a daily prescribed pain medication (Tr. 331-332).  He testified that his children come over to help with chores around the house and he eats sandwiches or frozen meals (Tr. 332-333).  He estimated that he sits in a recliner six to eight hours per day, and lays down for five or six hours per day, and can only sit in a straight-back chair about five minutes at a time (Tr. 334).  He stated that he could not lift and carry even five pounds occasionally, because his hands "give out" and he drops things, and that he can only climb three or four stairs before needing a rest (Tr. 335-336).  He testified that he had

surgery on his right hand in 2005, and that both hands, but the right hand mostly, have problems with going numb (Tr. 336-337).

In his written opinion, ALJ McClain summarized the claimant's hearing testimony, as well as some of the medical evidence. He found the claimant not credible in light of a "weak work record even before his alleged onset date," the fact he attained SGA in 2007 after a period of disability from 1998-2007, and a note by a physician that the claimant had re-applied for SSI due to financial need (Tr. 291). As to Dr. Ross, the ALJ noted Dr. Ross's treatment of the claimant and the 2011 RFC assessment (Tr. 290). He declined to give controlling weight to Dr. Ross's reliance on x-rays and reports from other doctors, stating that the "extreme exertional limitations appear at odds with [unspecified] limited objective physical findings" (Tr. 290). The ALJ then summarized the medical records from Cornerstone Family Clinic and found they were "completely inconsistent with an individual who would in essence (according to Dr. Ross) have to spend most of the day immobile and actually lying down" (Tr. 291).

The claimant again on appeal contends that the ALJ improperly disregarded Dr. Ross's findings and failed to properly account for his pain. The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of

the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by his treating physicians. Although the ALJ noted the proper analysis in step four, he failed to properly apply it in this case. The Commissioner proffers the arguments that the ALJ's sedentary RFC assessment was appropriate because he made no complaints regarding his hands to Dr. Ross, Dr. Ross only stated that he should not do "manual/industrial" work, and, despite showing decreased range of motion and positive straight leg tests, there were no significant objective findings. However, the undersigned Magistrate Judge declines to assess these *post hoc* rationales. *See Haga v. Astrue*, 482 F.3d 1205, 1207-1208 (10th Cir. 2007)

("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted].

Moreover, it is evident that the ALJ failed to properly evaluate all of the claimant's impairments in combination, in particular failing to connect the repeated findings regarding the limited range of motion and positive straight leg raising tests to the claimant's specific RFC. This failure to consider all impairments—singly and in combination—was error at step four. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'").

As to his pain, the ALJ discussed the claimant's reports of pain but in no way connected the RFC with the claimant's level of pain. "Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson v. Sullivan*, 987 F.2d 1482, 1490-91 (10th Cir. 1993)*, citing Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) *and Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988). In assessing allegations of pain, an ALJ "must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).

As the undersigned Magistrate Judge found previously, because there was objective evidence that the claimant had a pain-producing impairment, *i. e.*, degenerative disc disease of the lumbar spine, the ALJ was required to consider the claimant's pain and the extent to which it was disabling. He was not, however, entitled to ignore the documented impairment and only discuss it when reciting evidence, without connecting the RFC to *all* of the claimant's impairments.

The ALJ thus failed to properly assess the evidence and the claimant's pain in formulating his RFC and determining what work, if any, the claimant could perform with his level of pain. *See, e. g., Harrison v. Shalala*, 28 F.3d 112, at *5 (10th Cir. 1994) (unpublished table opinion) ("If the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry. The [Commissioner] must show that jobs exist in the national economy that the claimant may perform *given the level of pain [he] suffers*.") [citation omitted]. The decision of the Commissioner should be reversed and the case remanded for further analysis.

**Conclusion**

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 1st day of March 2017.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**